Mary Paladino v. Commissioner.
Paladino v. Commissioner
Docket No. 20122.
United States Tax Court
1950 Tax Ct. Memo LEXIS 159; 9 T.C.M. (CCH) 573; T.C.M. (RIA) 50163; June 30, 1950
*159 Valuation determined for gift tax purposes of bonds of a closely held real estate corporation where no sales of bonds had occurred at date of gift. Leslie Handler, Esq., 233 Broadway, New York, N.Y., for the petitioner. Stephen P. Cadden, Esq., for the respondent. ARUNDELL
Memorandum Findings of Fact and Opinion Respondent determined a deficiency of $6,391.50 in petitioner's gift tax liability for the calendar year 1944, the deficiency resulting from respondent's valuation of the gifts, 8 per cent debenture bonds, at their face value rather than at 80 per cent of their face value, the figure which petitioner claims more accurately reflects their fair market value at date of valuation. Findings of Fact Petitioner is an individual residing at 589 Minneford Avenue, New York, New York. *160 Her gift tax return for the period here involved was filed with the collector of internal revenue for the third district of New York. On November 1, 1944, petitioner made a gift of $149,500 face amount of 20-year 8 per cent debenture bonds of Gerosa Paladino Holding Corporation to the following donees in the following face amounts: Donee
Amount
Frank A. Paladino
$37,000
James Paladino
37,500
Mildred Suggese
37,500
Anna Procario
37,500 These debenture bonds were issued by Gerosa Paladino Holding Corporation (hereinafter sometimes referred to as the company) as of November 1, 1929, in total amount of $897,000 of which $666,000 represented bonds exchanged for promissory notes held by members of the Gerosa and Paladino families as evidences of indebtedness for moneys previously loaned by them to the company. The bonds were issued in varying principal amounts of $5,000, $1,000, and $500 and were in bearer form with attached interest coupons payable semiannually at the office of the company. The maturity date of the bonds was November 1, 1949, and the bonds were callable prior thereto at face value. In the event of default of two successive interest payments the *161 bonds became due and payable at the option of the holder. Interest on the bonds was partially in default within the years between 1932 and 1942. The defaults had been cured prior to November 1, 1944. None of the bonds had ever been called or retired. The bonds were not secured by mortgage, pledge or deed of trust and no sinking fund was provided. There was no restriction on the sale or transfer of the bonds. No sales of the bonds had occurred on the open market. The Gerosa Paladino Holding Corporation, a New York corporation, was organized in 1926 to buy, sell, and manage real estate. Its capital structure consisted of 6,000 shares of $100 par value common stock issued and outstanding. The stock was held by the following members of the Gerosa and Paladino families in the following amounts: Shares
John Gerosa
1,500
Anthony Gerosa
1,500
Anthony Paladino
1,000
James Paladino
1,000
Frank Paladino
1,000 No dividends had been paid on the common stock prior to November 1, 1944. Of the debenture bonds, prior to November 1, 1944, approximately one-half were held by Margaret Gerosa and Fay Gerosa and the other one-half by Jennie, Anna and Mary Paladino in equal *162 amounts. The balance sheet of the company at April 30, 1944, showed the following Assets
Cash
$ 20,251.11
Accounts Receivable
2,123.63
Note Receivable (Paljonat, Inc.)
100,000.00
U.S. Bonds
30,000.00
N. Y. City Bonds
3,930.67
Mortgages
50,321.70
Land and Buildings
1,290,584.40
Total Assets
$1,497,211.51
LIABILITIES AND NET WORTH
Liabilities
Due for Officers'
Salaries
$ 12,000.00
Security on Leases
4,785.00
Debenture Bonds
897,000.00 *
Total
$ 913,785.00
Net Worth
Capital Stock
$600,000.00
Deficit
16,573.49
Total
$ 583,426.51
Total Liabilities and Net Worth
$1,497,211.51
There was no substantial change in the company's assets and liabilities between April 1, 1944, and November 1, 1944. The total income of the company from rents for its fiscal year ended April 30, 1944, was $161,061.93 and the income from interest on mortgages was $11,702.68. Its total profit for said fiscal year before paying interest on its bonds, officers' salaries, corporation taxes, and before charging depreciation, amounted to $118,473.74. After the above deductions the company showed a net loss for the fiscal year 1944 *163 of $10,368.12. The following real estate properties were owned by the company as of November 1, 1944, and comprised the $1,290,584.40 figure attributed on its balance sheet to land and buildings: Age of
Book
Footage
Type
Improve-
Property
Value
(approx.)
Improvement
ment
1. 1100 Leggett Ave.
Service station
30
(Bronx)
$142,000.00
60,000
(1)
2. 835 East 136th St.
Storage ware-
23
(Bronx)
158,726.04
35,000
house (2)
3. 785 East 138th St.
Frankfurter
24
(Bronx)
35,700.00
15,000
mfg. (1)
4. 714 East 135th St.
Vacant property
(Bronx)
60,000.00
32,600
5. 791 Garrison Ave.
Storage ware-
25
(Bronx)
44,001.63
18,000
house (1)
6. 952 Longfellow Ave.
Paint shop (1)
25
(Bronx)
12,904.04
6,000
7. 954 Longfellow Ave.
Bronze metal
25
(Bronx)
25,370.82
12,000
co. (1)
8. 3090 Park Ave.
Garage and
24
(Bronx)
83,455.18
20,000
service station
(1)
9. 100 East Mosholu Park-
Apt. bldg. (6)
20
way (Bronx)
250,762.41
17,500
10. 430 East 163rd St.
Small bldg.
Not
(Bronx)
34,873.60
21,000
25 X 100
stated
11. 573 Austin Pl.
Storage ware-
Not
(Bronx)
101,781.93
46,000
house (1)
stated
12. 156th St. and Truxton
Vacant property
Ave. (Bronx)
17,267.00
15,700
13. 101 East 144th St.
Garage soap
Not
(Bronx)
77,814.78
68,000
mfg. (1)
stated
14. 2164 Webster Ave.
Mechanic's shop
20
(Bronx)
92,107.30
32,500
(1)
Storage ware-
house (1)
15. Whitlock Ave. & Aldus
Single-unit
Not
St. (Bronx)
35,056.40
28,000
garages (1)
stated
16. & 17. 682 East 138 St.
Not stated (1)
35
(Bronx)
41,871.96
20,000
18. 3007 Third Ave.
Tenement house
50
(Bronx)
14,841.13
14,000
19. 180 East 114th St.
Apt. bldg. (3)
40
(Manhattan)
9,587.69
1,800
20. 211 West 111th St.
Apt. bldg. (4)
30
(Manhattan)
3,887.09
1,700
21. 2522 Park Ave.
Vacant property
(Bronx)
5,836.15
27,000
22. 80 Canal St. West
Shanty
20
(Bronx)
2,500.00
9,000
23. 283 Rider Ave.
Vacant property
(Bronx)
3,916.32
9,000
24. Central Ave., Valley
Vacant property
Stream, N. Y.
507.50
1 acre
25, Commerce St., White
Vacant property
Plains, N. Y.
1,510.75
32,000
26. 432 East 162d St.
Boat mfg. (1)
Not
(Bronx)
15,053.28
10,000
stated
27. 2711 White Plains Ave.
Retail stores
15
(Bronx)
19,251.40
10,000
*164 Expira-
Character of
tion of
Condition on Description
Property
Neighborhood
Lease
of Improvement
1. 1100 Leggett Ave.
Vacant unim-
1945
Improvement shows wear
(Bronx)
proved prop-
and tear; streets on
erty adjoining
which it faces unpaved
2. 835 East 136th St.
Various types
1944
Special T-type building
(Bronx)
one-story
buildings ad-
jacent
3. 785 East 138th St.
Vacant proper-
1949
R.R. siding on one side
(Bronx)
ties adjoining
does not serve property
and detracts from its
4. 714 East 135th St.
Not stated
1946
value
(Bronx)
Used for storage of
utility pipe cable
5. 791 Garrison Ave.
Chicken market
1944
Warehouse for foodstuffs;
(Bronx)
adjoining and
no heating plant
other one-
story bldgs.
6. 952 Longfellow Ave.
Not stated
1944
Bldg. in need of repairs
(Bronx)
7. 954 Longfellow Ave.
Not stated
Half of bldg. vacant in
(Bronx)
1944
8. 3090 Park Ave.
Tenement hous-
Not
(Bronx)
ing adjoining
Stated
(leased)
9. 100 East Mosholu Park-
Tenement hous-
Bldg. in very good
way (Bronx)
ing adjoining
condition
10. 430 East 163rd St.
Tenement
Not
Property adv. for sale but
(Bronx)
houses
stated
no offers recd. at or
adjacent
((leased)
near book value
11. 573 Austin Pl.
Not stated
Not
No heating plant repairs
(Bronx)
stated
needed, located on un-
(leased)
paved dead-end street
12. 156th St. and Truxion
Vacant prop-
Not
Ave. (Bronx)
erty, one-
stated if
story garages
leased
13. 101 East 144th St.
One-story bldgs.
Not
(Bronx)
adjacent
stated if
leased
14. 2164 Webster Ave.
Not stated
Not
Occasional repairs needed
(Bronx)
stated if
leased
15. Whitlock Ave. & Aldus
Subway road-
1945
Corrugated garages owned
St. (Bronx)
bed adjacent
by the tenant
16. & 17. 682 East 138 st.
Tenement
Not
Buildings dilapidated in
(Bronx)
houses
stated if
appearance
adjacent
leased
18. 3007 Third Ave.
Not stated
Average rental $6 per room
(Bronx)
19. 180 East 114th St.
Not Stated
Yearly rental $1,800
(Manhattan)
20. 211 West 111th St. Not stated
(Manhattan)
21. 2522 Park Ave.
Filled land &
(Bronx)
surrounded
By coal yards
and vacant
property
22. 80 Canal St. West
Filled land
Rented on month-to-month
(Bronx)
basis
23. 283 Roder Ave.
Vacant property
(Bronx)
in vicinity
24. Central Ave., Valley
Unimproved un-
Stream, N. Y.
developed
property in
vicinity
25. Commerce St., White
Industrial area,
Property purchased for
Plains, N.Y.
predominantly
$1,400 and assessed in
vacant prop-
1944 at approx. $3,000
erty in
vicinty
26. 432 East 162d St.
Tenement
Leased on monthly basis
(Bronx)
houses in
in 1944
27. 2711 White Plains Ave.
Predominantly
Leased on monthly basis
(Bronx)
vacant prop-
in 1944; 6 stores on
erty in
property
vicinity
*165 The fair market value of the above properties as of November 1, 1944, was substantially less than their book value. Petitioner on her gift tax return for the calendar year 1944 reported gifts of the above-described debenture bonds in the face amount of $149,500 and valued such gifts at 80 per cent of the face amount on the ground of (1) non-marketability and (2) improbability that the company would have sufficient funds to pay the bonds at maturity. Respondent determined that said bonds were worth their face value on the basis valuation date and computed a deficiency accordingly. The bonds given by petitioner to the above-described donees on November 1, 1944, had a fair market value on that date of $119,600. Opinion ARUNDELL, Judge: Petitioner asks us to find a valuation of 80 per cent of face value for the bonds which comprised her gifts in the year involved instead of the valuation of 100 per cent of face value determined by the respondent. To ascertain the fair market value of the bonds, absent market quotations or other evidence of sales, we must project ourselves into the position of a hypothetical purchaser under no compulsion to buy. Regulations 108, section 86.19. *166 [1] The facts that would influence such a purchaser on the basic valuation date are properly determinative here. Among them, we count the priority of lien, the nature and extent of underlying assets, the effective interest yield, the maturity date, the past record of interest payments, the provisions for redemption, the provisions for acceleration in default of interest payments, and the relation of current earnings to the annual interest payable. *167 Giving the proper weight to each of the above relevant factors, we conclude that there is ample justification for petitioner's valuation of the bonds at 80 per cent of their face value and we have found as a fact that the bonds possessed a fair market value of $119,600 at the date of the gift. We are brought to this conclusion primarily by the security which underlies these bonds. As we have set forth in our Findings of Fact, the bonds are not secured by any mortgage or deed of trust. No sinking fund has been provided. The bondholders can look only to the general assets of the corporation in case of default and must come in along with other general creditors in the event of the corporation's insolvency. While it is true that the corporation's assets at the valuation date appear by their book value to be more than sufficient to discharge the bonds in full, it should be noted that there is nothing to prevent the corporation from giving a first mortgage on such assets or from pledging them as security in any speculative type of venture on which it might subsequently embark. Furthermore, the book value of these assets does not reflect their realizable value if liquidation should become *168 necessary. An officer of the corporation who had been engaged in the real estate business for a number of years testified that these assets were not worth more than 50 per cent of their book value at the valuation date. While his testimony may have been slightly colored by family interest, the facts which were brought out concerning the poor physical nature of the industrial properties and their lack of ready marketability strongly indicate that they were worth considerably less than their stated book value. The interest rate of 8 per cent on the bonds might appear at first glance to be comparatively high. However, petitioner introduced an expert witness, employed by one of the leading New York brokerage houses specializing in real estate bonds, who testified that the real estate bond market at this time was depressed and that many high-grade real estate bonds, adequately secured by mortgages or deeds of trust, were selling at a discount sufficient to give them effective current yields of from 8 to 12 per cent. In the light of this general market condition and the unsecured nature of petitioner's bonds, the effective yield based on the interest rate here is not particularly high. *169 Other factors which would tend to make a prospective purchaser require a substantial discount before purchasing these bonds are the losses incurred by the corporation in the years immediately prior to the valuation date. These losses had already impaired the capital of the corporation. Such a downward trend of earnings would cause the purchaser to suspect the corporation's ability to meet the interest payments on its bonds in the future, especially in view of its past record of interest payments. Even though the defaults had been cured prior to the valuation date, interest payments had been in default during the period between 1932 and 1942. We think it also probable that one who would consider purchasing the bonds of such a closely held corporation would demand a discount if he should acquire, as here, only a fractional part of the total bonds outstanding. Cf. . If the bonds were readily salable, it is true that such a fractional interest might have little or no effect on the market price. Where, however, the logical purchasers of the bonds would be members of the two families who control the corporation, the problem of *170 fractional interest becomes important price-wise. The only witnesses at the hearing who testified as to the value of the bonds were the two expert witnesses who testified in petitioner's behalf. After a careful consideration of their testimony and all other relevant factors gleaned from the entire record, we have reached the conclusion that the fair market value of the bonds at the valuation date was $119,600. Decision will be entered for the petitioner. Footnotes
1. Regulations 108: SEC. 86.19 Valuation of Property - (a) General. - The statute provides that if the gift is made in property, the value thereof at the date of the gift shall be considered the amount of the gift. The value of the property is the price at which such property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell. The value of a particular kind of property is not to be determined by a forced sale price. Such value is to be determined by ascertaining as a basis the fair market value at the time of the gift of each unit of the property. For example, in the case of shares of stock or bonds, such unit of property is a share or a bond. All relevant facts and elements of value as of the time of the gift should be considered. * * *
(c) Stocks and bonds. - The value at the date of the gift in the case of stocks and bonds, within the meaning of the statute, is the fair market value per share or bond on such date. * * *
If actual sales or bona fide bid and asked prices are not available, then, in the case of corporate or other bonds, the value is to be arrived at by giving consideration to the soundness of the security, the interest yield, the date of maturity, and other relevant factors, and, in the case of shares of stock, upon the basis of the company's net worth, earning power, dividend-paying capacity, and all other relevant factors having a bearing upon the value of the stock. Complete financial and other data upon which the donor bases his valuation should be submitted with the return. * * *↩